**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

| | | |
|---|---|---|
| ANTONIO JOHNSON, | : | Case No. 1:24-cv-604 |
| Plaintiff, | : | |
| vs. | : | District Judge Douglas R. Cole<br>Chief Magistrate Judge Stephanie K. Bowman |
| OFFICER DEEMER, *et al.*, | : | |
| Defendants. | : | |

**ORDER AND REPORT AND RECOMMENDATION**

Plaintiff, an inmate currently housed at the Toledo Correctional Institution, has filed three pro se complaints[1] under 42 U.S.C. § 1983 against multiple employees, some of whom are unidentified, at the Southern Ohio Correctional Facility (SOCF).[2] He alleges violations of his constitutional rights arising from two separate incidents while he was housed at SOCF. Plaintiff has been granted leave to proceed *in forma pauperis* (IFP) by separate Order. (Doc. 14).

This matter is before the Court for a s*ua sponte* review of the complaint, as supplemented

[1]The second complaint, which appears to be incomplete, was filed on the docket as document 6-1. The third complaint, which also appears to be incomplete, was filed on the docket as part of document 15-1 (*see* Doc. 15-1, at PageID 269-73). Given plaintiff's pro se status, the Court reads the three complaints together as plaintiff's single, operative complaint. For clarity in the docket, the **Clerk of Court** will be **directed** to file a copy of document 6-1 as a separate entry in the docket, titled "First Supplemental Complaint." The **Clerk of Court** will also be **directed** to file a copy of the pages found at document 15-1, PageID 269-73, as a separate entry in the docket, titled "Second Supplemental Complaint."

[2]Plaintiff attaches exhibits to his complaint. (*See* Doc. 15-1). Pursuant to Federal Rule of Civil Procedure 10, these exhibits are considered a part of the complaint "for all purposes." Fed. R. Civ. P. 10(c). *See Fishman v. Williams*, No. 14-CV-4823, 2016 WL 11484591, at *7 (C.D. Cal. Sept. 21, 2016) ("When screening a pro se plaintiff's complaint pursuant to 28 U.S.C. § 1915A, the Court may consider facts drawn from the complaint and supporting exhibits attached thereto."); *Johnson v. Buffalo Pub. Schools: Adult Educ. Div.*, No. 19-CV-1484, 2021 WL 9455714, at *3 (W.D.N.Y. Jan. 7, 2021) ("The Court deems the attachments and exhibits attached to [the plaintiff's] Complaint part of the pleading and considers them, to the extent they are relevant, in its screening decision."). However, the Court declines to comb through the exhibits to raise new claims or make legal arguments for plaintiff. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("[A]lthough this court has discretion to more broadly review the record on appeal, we, like the district courts, have a limited and neutral role in the adversarial process, and are wary of becoming advocates who comb the record of previously available evidence and make a party's case for it.").

(*see* footnote 1), to determine whether the complaint or any portion of it should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B) & § 1915A(b).

## I. Screening of Complaint

### A. Legal Standard

Because plaintiff is a prisoner, and is proceeding *in forma pauperis*, the Court must dismiss the complaint, or any part of it, that is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B) & § 1915A(b). Complaints by *pro se* litigants are to be construed liberally and held to less stringent standards than those prepared by attorneys. *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004). But this leniency is not boundless, and "it is not within the purview of the district court to conjure up claims never presented." *Frengler v. Gen. Motors*, 482 F. App'x 975, 977 (6th Cir. 2012).

In reviewing plaintiff's complaint at this stage, the Court must construe it in his favor, accept all well-pleaded factual allegations as true, and evaluate whether it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). But the Court is not required to accept factual allegations that are "clearly irrational or wholly incredible." *Ruiz v. Hofbauer*, 325 F. App'x 427, 429–30 (6th Cir. 2009). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Although "detailed factual allegations" are not required, the Court must dismiss the complaint "if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 662 (internal quotation and quotation marks omitted). In the end, "basic pleading essentials" are still required. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

**B. Plaintiff's Complaint**

Plaintiff's complaint, as supplemented (hereinafter "complaint"), consists of two groups of claims. For the sake of clarity, the Court will refer to the groups of claims as Counts One and Two.

**i. Count One**

Plaintiff brings the claims in Count One against defendants Corrections Officer Deemer, Lieutenant Stringer, Sergeant Pinson, Sergeant Barney, and unidentified corrections officers and medical staff. (Doc. 15, at PageID 209-10). Plaintiff alleges that on June 2, 2023, at around 9:30 a.m., he was standing in the bullpen of the J2 housing unit in handcuffs and shackles. (*Id*. at PageID 209). He was allegedly told by unidentified corrections officers in the unit that he was going to be placed in cell J-2-2. (*Id*.). Plaintiff allegedly asked to be placed in any cell other than J-2-2 or J-2-1 because the toilets in those cells did not flush from inside the cell, they smelled of urine and feces, the walls of the cells had dried feces on them, and they were infested with bugs. (*Id*.). When the officers reiterated that plaintiff was going to cell J-2-2, plaintiff refused. (*Id*.). Plaintiff was apparently warned that if he refused to go to the cell, they would call a "white shirt" and force would be used to put him in the cell. (*Id*.). According to plaintiff, defendants Pinson and Barney arrived a few minutes later. (*Id*.). Plaintiff explained that officers were trying to place him in cell J-2-2 and that he refused because of the alleged conditions of the

cell. (*Id.*). Pinson and Barney allegedly put their arms under plaintiff's arms and attempted to guide him to the cell. (*Id.*). Plaintiff states that when he refused to move, Pinson and Barney dragged him. (*Id.*). When they were in the vicinity of J-2-2, Pinson and Barney allegedly laid plaintiff on the floor and left him while they went to contact defendants Deemer and Stringer. (*Id.*; *see also* Doc. 15-1, at PageID 269).

Plaintiff alleges that, when Deemer and Stringer arrived, they picked him up by his arms and he willingly stood. (Doc. 15, at PageID 209-10). But when they told plaintiff to walk to J-2-2, plaintiff again refused. (*Id.* at PageID 210). Plaintiff asserts that Deemer and Stringer both responded by twisting and bending his wrist, fingers, and thumbs and telling him to walk. (*Id.*). According to plaintiff, he was in excruciating pain. (*Id.*). Stringer allegedly had his body camera activated and plaintiff states that he can be heard on the recording "in pain and explaining what[']s taken place to [his] body." (*Id.*). Plaintiff asserts that this went on "for a period of time" but he still refused to go to the cell. (*Id.*). Plaintiff asserts that when Deemer and Stringer realized that he would not go to the cell "no matter how much pain they infl[icted] on" him, they picked him up, carried him to J-2-2, and laid him on the ground. (*Id.*). Plaintiff further alleges that they then removed his handcuffs and shackles, shut and locked the cell's inner door, and then attempted to close the cell's outer door. (*Id.*). Plaintiff allegedly put his hands and arms through the bars to try and keep the outer door from closing. (*Id.*). Deemer purportedly grabbed plaintiff's hands and arms, twisted and bent them, and pushed them back into the cell. (*Id.*). Although not entirely clear from the complaint, it appears that while this was going on an unidentified officer in the booth closed the cell's outer door. (*Id.*).

Plaintiff states that medical was never sent to record any of his injuries. (*Id.*). According

to plaintiff, he had "a swollen marked up wrist, thumbs, an[d] fingers." (Doc. 15-1, at PageID 269). He also states that later in the day Stringer, who was named as a defendant in another lawsuit filed by plaintiff, returned with a form to take plaintiff's statement. According to plaintiff, during the incident, nobody used "IPC skills to establish communication" or sent a negotiator to talk to him. (Doc. 15, at PageID 210).

**ii. Count Two**

Plaintiff brings the claims in Count Two, which occurred approximately three months later, against defendants Corrections Officer Lewis, Corrections Officer Willis, Lieutenant P. Bradley, Negotiator Hossman, Camera Operator Gulley, Pepper Ball Launcher Kinner, Captain Dunlap, and unidentified corrections officers, lieutenants, and medical staff. (*Id*. at PageID 211-16).

Plaintiff alleges that on the evening of September 2, 2023, while he was laying on his bed in cell J-2-6, he heard a loud spraying sound and immediately began to cough. (*Id*. at PageID 211). Plaintiff got up, went to the part of the cell where the sound had come from, and looked into the vent. (*Id*.). According to plaintiff, he saw movement through the vent and heard laughing. (*Id*.). Furthermore, the vent was allegedly stained with "a lot" of orange spray. (*Id*.). Plaintiff states that he began to panic because he could not breathe without his chest burning and he could not stop coughing. (*Id*.).

Plaintiff alleges that he was confused by the spray coming in through the vent, grabbed his mattress, and put it over his door so that the officers would not be able to see into his cell. (*Id*.). Around that time, defendant Corrections Officers Lewis and Willis walked up to plaintiff's cell and told him to uncover the window. (*Id*.). Plaintiff refused, saying that one of them had

sprayed OC spray into his cell from the vent. (*Id*.). Plaintiff alleges that they then called the officer in the booth to open the outer door to plaintiff's cell. (*Id*.). Once the door was opened, Lewis pushed the mattress through the bars and told plaintiff to drop it. (*Id*.). Plaintiff eventually dropped the mattress and placed his hands through the bars of the cell's inner doors to show he was not a threat. (*Id*.).

Plaintiff then noticed that neither Willis nor Lewis had activated their body cameras, and asked them to do so. (*Id*. at PageID 212). They allegedly ignored his request and told him to pull his arms back in the cell. (*Id*.). Plaintiff refused, saying that one of them had sprayed OC into his cell and that he wanted to speak to a white shirt. (*Id*.). They allegedly responded they did not know what plaintiff was talking about. (*Id*.). Plaintiff states that after a few minutes of talking back and forth, Lewis became angry and radioed the booth officer to close the outer door, with plaintiff's hands still outside of the cell. (*Id*.). The outer steel door allegedly closed on plaintiff's arms, causing tremendous pain. (*Id*.). Plaintiff alleges that he feared what they might do to him if he allowed the outer door to close so he still did not remove his arms. (*Id*.). Lewis then allegedly tried to push the door closed. (*Id*.). Plaintiff claims that he asked Lewis to stop but he continued while officer Willis watched. (*Id*.). According to plaintiff, Willis and Lewis then left plaintiff with his arms still closed in the door. (*Id*.). Plaintiff states that he lost feeling in his arms and yelled to have the door opened. (*Id*.).

Lewis and Willis allegedly returned "after some time" and the booth officer opened the door. (*Id*. at PageID 213). Plaintiff states that he pulled his arms back in but stuck out one of his legs to keep the outer door open. (*Id.*). Lewis and Willis allegedly told plaintiff to get his arms and legs back in his cell. (*Id*.). Plaintiff allegedly refused and told them to get a white shirt

because he thought they were trying to cover up what they had done to him. (*Id.*). Lewis and Willis responded that they had not done anything and that it was all in plaintiff's head. (*Id.*). Plaintiff allegedly began to wonder if they were telling the truth and told them he would show them where OC had landed in his cell. (*Id.*). When he turned around to get a piece of paper that had OC spray on it, Willis allegedly "snap call[ed]" three demands to stop reaching and sprayed plaintiff with OC spray. (*Id.*). Plaintiff states that he was blinded by the spray and could not breath through his nose. (*Id.*). Thereafter, defendant Bradley, a white shirt, arrived but plaintiff did not recognize his name and refused to comply with his directive to bring his arms and legs back into the cell. (*Id.* at PageID 214). Plaintiff asserts that he was then sprayed again with OC spray. (*Id.*).

Eventually, plaintiff alleges, defendant Negotiator Hossman arrived. (*Id.*). Plaintiff spoke with him and, when Hossman asked him to stand up and get cuffed, plaintiff complied. (*Id.*). Plaintiff was taken to the shower where he talked to medical staff. (*Id.* at PageID 214-15). Plaintiff alleges that he was also strip-searched, threatened with being sprayed again if he did not comply with the strip search, and, as a result, OC spray from his body was transferred onto his private parts and caused blistering. (*Id.* at PageID 215). Plaintiff states that defendant Captain Dunlap authorized Camera Operator Gulley, Negotiator Hossman, and Pepper Ball Launcher Kinner to use force against plaintiff if he did not comply with the strip search and that none of them intervened to help him. (*Id.*). Plaintiff also alleges that he was returned to the same cell, which had not been decontaminated, but from which certain items of his property had been removed, with OC spray still on his body, and forced to go without a shower. (*Id.*; *see also* Doc. 15-1, at PageID 248).

Plaintiff seeks monetary, injunctive, and declaratory relief. (Doc. 15, at PageID 218-20).

**C. Analysis**

Plaintiff states that he is bringing Count One under (1) the Eighth Amendment for cruel and unusual punishment, specifically for failure to protect, excessive force, and deliberate indifference, (2) the First Amendment for retaliation, and (3) prison policies that were allegedly violated. (Doc. 15, at PageID 209; Doc. 6-1, at PageID 107; Doc. 15-1, at PageID 270-71). Plaintiff states that he is bringing Count Two under (1) the Eighth Amendment for cruel and unusual punishment, specifically for failure to protect, excessive force, deliberate indifference, and inadequate medical care, (2) the First Amendment for retaliation, and (3) the Fourteenth Amendment for violations of due process. (Doc. 15, at PageID 211; *see also* Doc. 6-1, at PageID 107).

At this stage in the proceedings, without the benefit of briefing by the parties, the undersigned concludes that plaintiff may proceed with Count One's Eighth Amendment excessive-force claims against defendants Deemer and Stringer, based on their allegedly "twisting, bending [plaintiff's] wrist, fingers, and thumb" as they told him to walk, and against defendant Deemer, based on his grabbing, twisting, bending, and pushing plaintiff's hands and arms back into the cell, on June 2, 2023. (Doc. 15, at PageID 209-10). The undersigned cautions plaintiff that no determination has been made regarding the merits of these claims or any defenses to them. Nor are defendants Deemer or Stringer precluded from filing a motion to dismiss, a motion for a more definite statement, or other appropriate motions under the Federal Rules of Civil Procedure. *See, e.g.*, *Wiley v. Austin*, No. 8:20-cv-220, 2020 WL 6204382, at *3

(D. Neb. Oct. 22, 2020). The Court is simply concluding that these claims may proceed to further development at this time.

The undersigned concludes, however, that the remainder of Count One should be **DISMISSED** for failure to state a claim upon which relief can be granted and that Count Two should be **DISMISSED** as improperly joined in this case. *See, e.g.*, *Conley v. Hess*, No. 1:20-CV-168, 2020 WL 2393759, at *4 (W.D. Mich. May 12, 2020) (noting that the Court looks to a plaintiff's "first set of factual allegations in determining which portion of the action should be considered related.").

***i. Remainder of Count One***

As an initial matter, the Court understands the deliberate-indifference claims in Count One to assert deliberate indifference to alleged inhumane cell conditions in J-2-2, and deliberate indifference to plaintiff's serious medical needs. (Doc. 15, at PageID 210) For the reasons below, both claims are subject to dismissal.

***a. Conditions of Confinement***

Plaintiff has failed to state a plausible conditions-of-confinement claim in Count One.

> To establish a violation of the Eighth Amendment, the offending conduct must reflect an unnecessary and wanton infliction of pain. *Whitley v. Albers,* 475 U.S. 312, 319 (1986). A viable Eighth Amendment claim has an objective and subjective component. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). The objective component requires that the pain be serious, *see Hudson v. McMillian,* 503 U.S. 1, 8-9 (1992), and the subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *Wilson v. Seiter,* 501 U.S. 294, 302-03 (1991).

*Dean v. Campbell*, No. 97-5955, 1998 WL 466137, at *2 (6th Cir. July 30, 1998).

The Sixth Circuit has recognized that the Eighth Amendment is not violated when prisoners are required to use non-flushable toilets on occasion. *See Knop v. Johnson,* 977 F.2d

996, 1013 (6th Cir. 1992); *Abdur–Reheem–X v. McGinnis,* 1999 WL 1045069, *2 (6th Cir. Nov. 12, 1999) ("the Eighth Amendment does not require that prisoners enjoy immediately available and flushable toilets"). Likewise, plaintiff's complaints about having bugs in his cell are insufficient to demonstrate "conditions intolerable for prison confinement." *See Rhodes v. Chapman,* 452 U.S. 337, 344 (1981); *see also Brooks v. Daniels*, No. 3:12-CV-446-S, 2012 WL 3866453, at *2 (W.D. Ky. Nov. 1, 2012) ("While unpleasant, the alleged conditions of having insects in a cell is not below the constitutional standard of the minimal civilized measures of life's necessities.") (internal quotation marks omitted); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 467 (M.D. Pa. 2010) (concluding that a prisoner's allegation that his cell was "infested with 'cockroaches, spiders, worms, [g]nats, mice and other unknown insects'" fell short of demonstrating a constitutional harm).

Further, "[i]t is well-established that the presence of *some* unsanitary conditions in a cell (including fecal matter) does not establish an Eighth Amendment claim, except in circumstances where the volume of matter and duration of exposure are extreme." *Edge v. Mahlman*, No. 1:20-CV-892, 2021 WL 3725988, at *3 (S.D. Ohio Aug. 23, 2021), *report and recommendation adopted*, 2022 WL 20113138 (S.D. Ohio Mar. 18, 2022). As such, requiring a prisoner to live in a cell with "massive amounts" of feces covering "nearly floor to ceiling" and to sleep in raw sewage violates the Eighth Amendment. *Taylor v. Riojas*, 592 U.S. 7, 7-8 (2020). On the other hand, temporary or minor inconveniences resulting from unsanitary conditions are unlikely to meet this standard. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also Brown v. Mahlman*, No. 1:22-CV-239, 2022 WL 17817615, at *3 (S.D. Ohio Dec. 19, 2022) ("Courts have typically found that temporary exposure to feces does not meet the objective

component of the Eighth Amendment conditions of confinement test"); *Logan v. Michigan Dep't of Corr.*, No. 1:21-CV-791, 2022 WL 325404, at *10 (W.D. Mich. Feb. 3, 2022) (plaintiff who was allegedly exposed to "decades of filth, bodily fluids[,] and other unknown possible biohazardous stains on the walls, floors[,] and the slot attached to the door" while in segregation for approximately six months failed to state a claim); *Figueroa v. Cty. of Rockland*, No. 16-CV-6519, 2018 WL 3315735, *7 (S.D.N.Y. July 5, 2018) (allegations of feces and bodily fluids on the walls are insufficient to create a constitutional concern).

The cell conditions that plaintiff alleges in J-2-2 are unpleasant. But under the above standards, and in view of the relatively short length of time that plaintiff was subjected to them (less than a month based on the cell assignment (K-5-72) shown on the June 26, 2023 Informal Complaint Resolution filed as an exhibit to the complaint (*see* Doc. 15-1, at PageID 241)), the alleged conditions do not rise to the level of a plausible Eighth Amendment claim.

Accordingly, Count One's Eighth Amendment conditions-of-confinement claim should be dismissed.

***b. Denial of Medical Care***

Nor does Count One include a plausible claim for denial of medical care. To state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must allege facts sufficient to demonstrate that the defendants were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). A prison official is "deliberately indifferent" only if he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. As for the objective component, a sufficiently serious medical need is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a

lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 891 (6th Cir. 2004) (internal quotation omitted). The subjective component, on the other hand, requires a prisoner to plead facts which show that the prison official had a "sufficiently culpable state of mind." *Farmer,* 511 U.S. at 834. Prison officials are liable only if they know of and disregard "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference." *Id.* at 837. Mere negligence does not constitute deliberate indifference. *See Estelle,* 429 U.S. at 106.

Although plaintiff alleges that he suffered injuries from defendants Deemer and Stringer "twisting, bending [his] wrist, fingers, and thumbs" (Doc. 15, at PageID 210) and from Deemer "grabbing [his] hands and arms twisting and bending and pushing them back into the cell" (*id.*), plaintiff's alleged injuries (a swollen wrist, fingers and thumb (Doc. 15-1, at PageID 269)) are not alleged to be so obvious that a lay person would understand plaintiff to require medical attention. And even assuming, *arguendo*, that plaintiff could satisfy the objective component of the claim, he does not allege that any of defendants in Count One were aware that he needed medical attention. "[A] prison official who was unaware of a substantial risk of harm to an inmate may not be held liable under the Eighth Amendment even if the risk was obvious and a reasonable prison official would have noticed it." *Lumbus v. Weisbar*, No. 1:23-CV-196, 2024 WL 1756915, at *26 (S.D. Ohio Apr. 24, 2024), *report and recommendation adopted sub nom. Lumbus v. Weishar*, 2025 WL 1809729 (S.D. Ohio July 1, 2025) (citing *Farmer*, 511 U.S. at 841-42).

Accordingly, Count One's denial-of-medical care claim should be dismissed.

***c. Excessive Force and Failure to Intervene***

Additionally, the Court understands Count One to include Eighth Amendment excessive-force and failure-to-intervene claims against defendants Barney, Pinson, and the unidentified corrections officers with whom plaintiff interacted on June 2, 2023. (Doc. 15, at PageID 209). Liberally construed, the Court also understands Count One to include a failure-to-intervene claim against defendant Stringer for not preventing defendant Deemer from grabbing, twisting, bending, and pushing plaintiff's hands and arms back into the cell. (*Id*. at PageID 210). Although the Court has allowed excessive-force claims to proceed at this juncture against defendants Deemer and Stringer, plaintiff has failed to state plausible excessive-force or failure-to-intervene claims against defendants Barney, Pinson, or the unidentified corrections officers, or a plausible failure-to-intervene claim against defendant Stringer.

***1. Excessive Force***

To prove an Eighth Amendment excessive-force claim, a prisoner must establish both a subjective and an objective component. *Hudson v. McMillan*, 503 U.S. 1, 8 (1992). The subjective component focuses "on the state of mind of the prison officials" and examines "whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Hudson*, 503 U.S. at 6). The objective component requires the pain inflicted on the prisoner to be "sufficiently serious," although this factor is not dispositive. *Id.* (citing *Wilson*, 501 U.S. at 298). While the use of force need not be severe, "[t]he Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not

of a sort repugnant to the conscience of mankind." *Wilkins v. Gaddy*, 559 U.S. 34, 37–38 (2010) (internal quotation and quotation marks omitted). So, "[a]n inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Id.* Yet the Court's focus must remain on the reasonability of the force used. "[W]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated[,] whether or not significant injury is evident." *Williams*, 631 F.3d at 383 (internal quotation omitted).

As for the unidentified corrections officers who initially attempted to escort plaintiff to J-2-2, plaintiff does not allege that they applied any force against him. Rather, in response to plaintiff's refusal to move, they allegedly called a white shirt. (Doc. 15, at PageID 209). To the extent that they allegedly told plaintiff that if he refused to cooperate force would be used to put him in cell J-2-2 (*see id.*), there are no facts from which the Court can infer any malevolent intent on their part. *See Wilson,* 501 U.S. at 302-03. "[T]he good faith use of physical force in pursuit of valid penological or institutional goals will rarely, if ever, violate the Eighth Amendment." *Parish v. Johnson,* 800 F.2d 600, 604 (6th Cir. 1986). These defendants' alleged statements to plaintiff that force would be used if he continued to fail to cooperate are simply not enough by themselves to state a claim.

Similarly, plaintiff's allegations that an unidentified officer in the booth closed the outer door to his cell while defendant Deemer was grabbing, twisting, bending, and pushing his hands and arms back inside (Doc. 15, at PageID 210) are insufficient to state a plausible excessive-force claim. Without additional facts, the Court cannot "infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P 8(a)(2)) (alteration original).

As for defendants Barney and Pinson, plaintiff alleges that these defendants dragged him and ultimately laid him on the ground when he refused to walk. (Doc. 15, at PageID 209; *see also* Doc. 15-1, at PageID 269). These allegations are insufficient to establish an Eighth Amendment claim. Importantly, plaintiff does not allege that Barney or Pinson's alleged actions caused him pain or were performed other than in an attempt to "guide" him to J-2-2 (Doc. 15, at PageID 209) and get additional assistance when he refused to move. *See Williams*, 631 F.3d at 383. The undersigned cannot conclude that plaintiff's allegations against Barney and Pinson are more serious than a "push or shove" or rise to the level of a constitutional violation. *See Wilkins*, 559 U.S. at 38 ("An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." (internal quotation and quotation marks omitted)).

***2. Failure to Intervene***

Nor does plaintiff allege that Barney, Pinson, or the unidentified officers who initially escorted him were present when he was with Deemer and Stringer. Without any allegations that these defendants were present, plaintiff cannot state a failure-to-intervene claim. *See, e.g., Prall v. Supreme Ct.*, No. 11-CV-7004, 2013 WL 1405880, at *9 (D.N.J. Apr. 4, 2013) (dismissing failure-to-protect claim in the absence of well-pleaded facts that the defendants were present). And, to the extent the booth officer, or defendant Stringer, observed Deemer forcibly placing plaintiff's hands and arms back into the cell, allegations which plaintiff does not make, there are insufficient facts to plausibly suggest that either defendant had the opportunity to intervene.

Rather, plaintiff alleges that Deemer was grabbing, twisting, bending, and pushing his hands and arms back into the cell "at the same time" the outer door to his cell door was closing. (Doc. 15, at PageID 210). *See, e.g., Brown v. Mann*, No. 1:25-CV-759, 2025 WL 2055266, at *5 (W.D. Mich. July 23, 2025) (finding the plaintiff failed to state a failure-to-intervene claim where there were no allegations that the defendant was aware that excessive force was being used or planned, or had the opportunity to stop it from occurring).

Accordingly, Count One's excessive-force and failure-to-intervene claims against defendants Barney, Pinson, and the unidentified corrections officers, and Count's One failure-to-intervene claim against defendant Stringer should be dismissed.

***d. Retaliation Claims***

Plaintiff also seeks to recast Count One's Eighth Amendment claims as retaliation claims. (Doc. 15, at PageID 209). Without factual elaboration, plaintiff suggests that defendants' alleged actions on June 2, 2023, were in retaliation for plaintiff filing another lawsuit in this Court (Case No. 1:23-cv-39) in January 2023, in which Stringer was also named as a defendant. (Doc. 15, at PageID 210). But there is no indication that Stringer or any of the defendants named in Count One were even aware of that lawsuit in early June 2023. Indeed, summons were not issued in that case until July 21, 2023, *after* the events alleged herein. (Case No. 1:23-cv-39 (Doc. 10)).[3]

Moreover, "not every claim of retaliation by a disciplined prisoner, who either has had contact with, or has filed a lawsuit against prison officials, will state a cause of action for retaliatory treatment. Rather, the prisoner must allege a chronology of events from which retaliation may plausibly be inferred." *Cain v. Lane*, 847 F.2d 1139, 1143 n.6 (7th Cir. 1988).

[3]A district court is permitted to take judicial notice of its own files and records. *See e.g.*, *Mangiafico v. Blumenthal*, 358 F.Supp.2d 6, 9–10 (D.Conn.2005). *See also United States v. Doss*, 563 F.2d 265, 266 n. 2 (6th Cir. 1977).

Plaintiff has failed to allege a chronology of events from which the Court could reasonably infer retaliation on the part of any of the defendants in Count One.

Accordingly, Count One's retaliation claim should be dismissed.

***e. Violation of Prison Policies***

Finally, it appears that Count One may also raise claims based on the alleged violation of prison policies. (*See* Doc. 15-1, at PageID 269-70 (citing prison policies and regulations). "Section 1983 does not provide a remedy for violations of state laws or regulations." *Honzu v. Doe*, No. 2:22-CV-292, 2023 WL 3506155, at *6 (S.D. Ohio May 17, 2023), *report and recommendation adopted sub nom. Honzu v. Warden, Ross Correctional Inst.*, No. 2:22-cv-292, 2023 WL 5951768 (S.D. Ohio Sept. 13, 2023). *See also Laney v. Farley*, 501 F.3d 577, 580 n.2 (6th Cir. 2007) (same). Thus, "Defendants' alleged failure to comply with [a state] administrative rule or policy does not itself rise to the level of a constitutional violation." *Williams v. Burke*, No. 2:08-cv-123, 2009 WL 1788374, at *1 (W.D. Mich. June 18, 2009).

Plaintiff's allegations or suggestions that any defendant in Count One failed to follow prison policies or regulations thus do not state a claim for relief.

***ii. Unrelated Claims in Count Two***

Having considered the claims in Count One, the Court turns to the claims in Count Two. Because the claims in Count Two are factually distinct and do not involve the same defendants or arise out of the same transaction, occurrence, or series of transactions or occurrences and the claims in Count One, the undersigned finds that they should be dismissed without prejudice as improperly joined in this action. Fed. R. Civ. P. 20(a)(2).

A plaintiff may not join unrelated claims and various defendants unless the claims arise "out of the same transaction, occurrence, or series of transactions or occurrences; and...any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (citing 28 U.S.C. § 1915(g)) ("Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multiple claim, multiple defendant] suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees."). "[T]he proper remedy for . . . misjoinder is to sever the claims against the unrelated parties and dismiss those claims without prejudice." *Cage v. Michigan*, No. 16-cv-11679, 2018 WL 3729062, at *2 (E.D. Mich. Aug. 6, 2018) (citing Fed. R. Civ. P. 21) (additional citation omitted). *See also Harris v. Erdos*, No. 1:21-CV-104, 2022 WL 3053496, at *7 (S.D. Ohio Aug. 3, 2022). Under Rule 21 of the Federal Rules of Civil Procedure, courts have "broad discretion 'to order a severance to avoid causing unreasonable prejudice and expense to the defendant . . . and to avoid great inconvenience in the administration of justice.'" *Proctor v. Applegate*, 661 F. Supp. 2d 743, 781 (E.D. Mich. 2009) (quoting *Nali v. Mich. Dep't of Corrs.*, No. 07-10831, 2007 WL 4465247, at *2 (E.D. Mich. 2007)).

Under Rule 21, plaintiff's unrelated claims in Count Two, which are brought against defendants Corrections Officer Lewis, Corrections Officer Willis, Lieutenant P. Bradley, Negotiator Hossman, Camera Operator Gulley, Pepper Ball Launcher Kinner, Captain Dunlap, and unidentified corrections officers, lieutenants, and medical staff, should be **SEVERED** from this lawsuit and **DISMISSED without prejudice**.

Accordingly, in sum, plaintiff may proceed at this juncture with Count One's Eighth Amendment excessive-force claims against defendants Deemer and Stringer, based on their allegedly "twisting, bending [plaintiff's] wrist, fingers, and thumb" as they told him to walk, and against defendant Deemer, based on his grabbing, twisting, bending, and pushing plaintiff's hands and arms back into the cell, on June 2, 2023. (Doc. 15, at PageID 209-10). However, plaintiff has failed to comply with the Court's previous Notice of Deficiency, directing him to provide completed summons forms. (Doc. 3; *see also* Doc. 6-3 (containing incomplete summons forms)). The summons forms Plaintiff provided fail to include his name and address where it says: "The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:" In light of this omission, and in light of his intervening change of address, it is **ORDERED** that plaintiff, **within thirty (30) days** of the date of this Order, submit completed summons and U.S. Marshal forms for service on defendants Deemer and Stringer. Once the Court receives the requested summons and United States Marshal forms, the Court will order service of process of the Complaint by the United States Marshal on these two defendants.

But, for the reasons set forth above, the remaining claims in Counts One should be **DISMISSED** for failure to state a claim upon which relief can be granted, 28 U.S.C. § 1915(e)(2)(B) & § 1915A(b), and plaintiff's unrelated claims in Count Two should be **SEVERED** and **DISMISSED without prejudice**. Fed. R. Civ. P. 20(a)(2); 21.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff may **PROCEED** at this juncture for further development on his Eighth Amendment excessive-force claims against defendants Corrections Officer Deemer and Lieutenant Stringer, based on their allegedly "twisting, bending [plaintiff's] wrist, fingers, and

thumb" as they told him to walk, and against defendant Deemer, based on his grabbing, twisting, bending, and pushing plaintiff's hands and arms back into the cell, on June 2, 2023. (Doc. 15, at PageID 209-10).

2. Plaintiff, **within thirty (30) days** of the date of this Order, submit a completed summons and U.S. Marshal form for service on defendants Corrections Officer Deemer and Lieutenant Stringer. The **CLERK OF COURT** is **DIRECTED** to send plaintiff two blank summons and United States Marshal forms for this purpose. Once the Court receives the completed summons and United States Marshal forms, the Court will order service of process by the United States Marshal.

3. In accordance with footnote 1, the **CLERK OF COURT** is **FURTHER DIRECTED** to: (1) file a copy of document 6-1 as a separate entry in the docket, titled "First Supplemental Complaint," and (2) to file a copy of the pages found at document 15-1, PageID 269-73, as a separate entry in the docket, titled "Second Supplemental Complaint."

4. Plaintiff **SHALL** serve upon defendants or, if appearance has been entered by counsel, upon defendants' attorney(s), a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date a true and correct copy of any document was mailed to defendant or defendants' counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

5. Plaintiff **SHALL** inform the Court promptly of any changes in his address which may occur during the pendency of this lawsuit.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The following claims be **DISMISSED without prejudice**:

a. Count One's claims of unconstitutional conditions of confinement, denial of medical care, and retaliation against all defendants named therein,

b. Count One's claims of excessive force and failure to intervene against defendants Barney, Pinson, and the unidentified corrections officers, and

c. Count One's failure-to-intervene claim against defendant Stringer.

2. The following claims be **DISMISSED with prejudice:**

a. Count One's claims based on the alleged violation of prison policies and regulations against all defendants named therein.

3. The Court **SEVER** and **DISMISS** plaintiff's unrelated claims in Count Two **without prejudice** to plaintiff re-filing a separate action or actions including such claims if he so wishes within **thirty (30) days** of the date of any Order adopting this Report and Recommendation. *See, e.g.*, *Berry v. Ill. Dep't of Hum. Servs.*, No. 00-CV-5538, 2001 WL 111035, at *18 n.22 (N.D. Ill. Feb. 2, 2001) ("It is appropriate to permit a reasonable, but not unlimited, time period to file the new complaints or amendments. . . . Up to thirty days from the entry of today's order will be presumed to be a reasonable period of time.") (citation omitted). *See also* Fed. R. Civ. P. 20(a)(2); 21; *Harris*, 2022 WL 3053496, at *7.

4. The Court certify pursuant to 28 U.S.C. § 1915(e)(2)(B) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith, and therefore, deny plaintiff leave to appeal *in forma pauperis*. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

**PROCEDURE ON OBJECTIONS:**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

May 14, 2026

*s/Stephanie K. Bowman*
STEPHANIE K. BOWMAN
UNITED STATES CHIEF MAGISTRATE JUDGE